Now we'll have an argument on U.S. v. Davis and counsel for appellant. Please come forward. Good afternoon, your honors. May I remove my mask while speaking? Yes, of course. And you have reserved four minutes. Is that right? That's correct, your honors. All right. Very good. All right. Good afternoon, your honors. And may it please the court, my name is Gabrielle Lee, and I represent Appellant Ikelas Davis. Just two months before Mr. Davis appeared before the district court for sentencing, the Supreme Court issued its opinion in rehave, holding that in order to convict someone of being a felon in possession, the government must prove beyond a reasonable doubt that he knew of his relevant status. And if we look at this record that we have in front of us, we have two pieces of information I think that are particularly telling. One, he was advised at the time he was before the state court judge on the predicate felony, the maximum penalty he faced was seven years. And on the sentencing on that offense, he was sentenced to 23 months, albeit he might have done less. Aren't those two indicators sufficient for us to know that he knew he had a felony status? That is, he was convicted of a crime for which he faced more than a year? No, your honor, it's not sufficient. Well let me add this fact, and then with these three facts, I'd like you to answer a question. He was also informed at that time that it was a felony, right, the judge said it was a felony, and in the documents it said it was a felony. So if you now answer with all of those facts before us. With all of those facts, your honor, it's still insufficient, because it's important not to automatically equate being told something with someone's knowledge at the time they possessed the firearm. Roughly 16 years had passed since Mr. Davis appeared at these hearings. When he was told about the maximum penalties of the offense, this was during a colloquy when he was waiving his right to a jury and proceeding with a bench trial. And similarly, whenever he was told about his sentence, it being 23 months, that he was convicted of a felony of 23 months, this was at his sentencing hearing, when he had just spent over 100 days in the Allegheny County Jail, he was also being told that he was going home that day. The problem with the argument, though, is I can't imagine, I was trying to think about this with my clerks, what could be a more lasting memory than being 19 and being before a judge, and a judge tells you this is a felony offense, at 19 you could be in jail for 23 months, and the maximum is 7 years, I mean, it's hard to say that 15 years later you wouldn't remember that, that's, also, I'm not sure reading the jurisprudence of the Supreme Court or our court that I forgot is something that you can argue. Well, Your Honor, with the Supreme Court's opinions and both Greer and Geary and Rieke, it requires that he has to know at the time, so, you know, the inquiry isn't whether the government exercised its due diligence by providing notice at the time that he was convicted 15 years ago, nor is it what he should have known because he was told, those aren't inquiries, it's a subjective inquiry as to what was Mr. Davis' knowledge in 2016. Do you have any law that says it's a subjective inquiry? Well, Your Honor, the court's opinion in Rieke specifically talks about having the criminal intent. Are you sure it's not based upon what a reasonable person would have known presented with those facts when looking at it from the perspective we're sitting in now? Your Honor, it's based upon, no, it is a subjective inquiry because it is based on Mr. Davis, you know, the question for the court upon remand, when it goes before a jury, is going to be, what did Mr. Davis know at the time he possessed a firearm? Are you suggesting that he was not informed that he was entering a plea to a felony offense? No, Your Honor, I am not representing that he was not informed. In fact, the record does support that he was informed, but the court has to consider all of the factors surrounding, you know... I'd like to read to you from the sentencing transcript before the federal district court judge from April of 2019, appendix 291, lines 15 through 17. Yes, I had a felony. Those are the words of Mr. Davis. And then he continues, but theft by unlawful taking does not, in the state of Pennsylvania, prohibit you from having a firearm. So the way I read it is he was on notice that he had a felony, but maybe he's quibbling about his knowledge of the consequence of that particular felony. How do you rectify his own words in 2019? Yes, because at his sentencing in 2019, by that point, he understood what a felony was and understood that his theft felony was punishable by more than a year. By that time, he'd already been before the courts. He's had the opportunity to consult with counsel. He's had the opportunity to talk about, you know, whether or not his theft defense qualified as a felony. And, you know, any attorney, you know, who practices law would advise him that it does and would advise him what it means to be a felony, what the actual definition is. I have a note here that says a common pleas court finds him guilty. He affirms he is being charged with a third-degree felony punishable by seven-year jail sentence and a $15,000 fine. Isn't that sufficient? Your Honor, it's not because it speaks to Mr. Davis's knowledge at that time in the year 2000. There are a number of factors that the court can consider, in addition to the fact that time has passed, such as Mr. Davis's age at the time, the surrounding circumstances of being told. Now, I agree with you, Judge Greenaway, that being arrested and being presented in the court is a memorable event. However, it doesn't necessarily mean you remember all of the details that are being told to you during the hearing. I mean, at no point was he told that you are pleading guilty to a felony? Your Honor, he was. He was told that back when he was, you know, sentenced back in the year 2000. So, yes, I fully can see that Mr. Davis was told at some point that he was convicted of a felony. But what he has to know, in the year 2016, when he possessed a firearm, is that he has been convicted of a crime punishable by more than a year. If he got a sentence and the sentencing judge says 23 months, that's not going to be unforgotten. Your Honor, it certainly is, because he only served roughly four months in prison. Wouldn't the more logical reaction be, I only had to do four months of that 23, rather than blanking out on the 23? Because that's what the argument you're asking us to accept, is that in 2016, or whatever it was, that he now has no present recollection of what Judge Fuentes just mentioned, together with the fact that he was told he had received a 23-month sentence. That's correct, Your Honor. Another thing that was stated during this time period is that the guidelines in that case were between three to six, and then six to 12 months. So there were a number of factors that he was told throughout those proceedings, whether it be his actual trial, whether it be his sentencing. For your argument's confusion? No, Your Honor. This is not a mistake. This is not a mistake of law. Okay, so it's not confusion, and there is nothing in the record, and I'm just curious whether I've missed it. There's no argument that he has any mental or cognitive difficulties, right? That's correct, Your Honor. Okay, so this is really just about, given his age, and it's not a confusion argument, so given his age, it's unreasonable to think that 15 years later, he could remember back that it was a felony, the max was seven years, and he could get up to 23 months. We'd have to make that finding in order for you to prevail. You would have to make the finding that at the time that he possessed a firearm in 2016, he did not know that he was convicted of a crime punishable by more than a year. How is it that he didn't know? Sometimes it sounds like a convenient lapse of memory, as opposed to actually knowing what happened in the courtroom. Your Honor, this is not a convenient lapse of memory. If we think practically, while the court certainly acknowledged that a court proceeding is very memorable, there are a number of things in our own lives that we've been told 15 years ago that we don't remember now. What was the sentence imposed at that time? I'm sorry, Your Honor? What was the sentence imposed at that time? It was time served to 23 months. Twenty-three months is more than a misdemeanor, isn't it? Yes, 23... It's twice, generally, about twice as much as you would expect in a misdemeanor. But we're also attorneys, and we understand what an average sentence is and what's expected for a misdemeanor. Mr. Davis is not. But you're not saying that he wasn't told that he's being sentenced to a felony? No, Your Honor, he was told that that is a third-degree felony. Your argument is that he forgot that aspect of the sentence? Your Honor, he did, he did. You know, there were a number of things that were going on at the time he was told, and then 16 years later, when he possessed the firearm, he did not have knowledge. So what's the opinion? Help me write the opinion. The opinion is 16 years is a long time, and it's likely that he didn't understand, and he forgot. I mean, would 17 years be too much? Would 15 years be too little? Help me write the opinion. Your Honor, so the opinion doesn't have to focus specifically on the amount of time that passed. When we're at prong three of plain error review, Mr. Davis simply has to set forth that he would present evidence to a jury in support of his lack of knowledge. And to do that, he would, you know, address the passing of time. He would certainly address, you know, age and all the other factors that he was told at this hearing. And then there's also the element of when he was charged in state court, they presented him with, you know, charging documents that say that, hey, he was charged with an offense that he was never even convicted of. But we need to show, I'm reading from Greer, that the defendant make an adequate showing on appeal that he would have presented evidence to the district court that he did not, in fact, know he was a felon when he possessed the firearms. He'd have to get up and basically we'd have to find there's evidence in the record that he didn't know. Yes, yes, Your Honor. And the judge would have to determine whether there's a reasonable probability that that would be accepted. There's a reasonable probability that he would not have pled guilty and he would have proceeded to trial. So yes, Your Honor, Mr. Davis would, you know, have to go on the stand as he intended to do during the original trial. He went through the entire colloquy. But, you know, there's no better evidence that someone would have continued to trial than the fact that he actually did go to trial. Mr. Davis, you know, went through the close of the government's case and at sentencing he sent statements on the record that go to his lack of knowledge. So he wasn't, it wasn't the statements at sentencing, though, going to his lack of knowledge of the consequence of the conviction, not that he didn't know he was a felon, because he says during that same sentencing proceeding, I noted, that he focused on the fact that his drug conviction was dismissed. The drug felony was, those were his words, the drug felony was dismissed, and that would have prohibited, I'm now taking liberties, prohibited me from having a gun. I'm Davis for the purpose of this. So it seemed to me that what his real point was, looking at his own statements at sentencing, to the court, he didn't say, I didn't know I wasn't a felon. What he was telling the judge was, I didn't think my theft offense de-armed me. How do you have us reconcile his own statements to the court on that subject? Because at the time, pre-have had not come down, so he was informed by his attorneys that his knowledge didn't matter. So the fact that he didn't say the magic words, I did not know that I was convicted of an offense that meets the federal definition of a felony, that's punishable by a year or more, does not mean that he did not know that, Your Honor. He, as a non-lawyer, is speaking, you know... But you say he's a non-lawyer. He was pretty sophisticated because he was distinguishing, his words, not his lawyer's words, distinguishing between the consequences of a theft offense and the consequences of a drug offense. This conveys to me, from our record, a pretty sophisticated understanding of one's background rather than a person who forgot. Yes, Your Honor. By that time, he'd had an opportunity to do legal research, but what the research showed is that it's been consisted in the Third Circuit and all other circuits that knowledge that it's an actual felony was not relevant and it was not an element. In your brief, you focus on consequences, right? But I presume at this point, given what the development of the jurisprudence has been, both in the Supreme Court and in our court, that you've abandoned the consequences argument. You know, he didn't understand the consequences and you're just focused on knowledge now. No, Your Honor, I have not abandoned the consequence argument and that's the Supreme Court in rehab. Yeah, tell me how you were... That would seem to be not relevant given Greer and Judge Schwartz has already been through, you know, the reasonable probabilities. I'm not sure why the consequences would matter. Not necessarily. Our argument is not necessarily that he didn't understand the consequences of this conviction. But that's what you're saying. I apologize. Let me be clear. This goes to his knowledge as to whether or not he committed a felony. You know, the fact that the Pennsylvania statute conflicts goes to his knowledge as to whether or not he's prohibited from possessing a firearm and whether or not he was convicted of a felony. Now, is it directly on point as a factor? You know, do I know that I've been convicted of a crime punishable by a year or more? No, but it makes his lack of knowledge make more sense because it's been confirmed, you know, in a state court statute that, you know, he actually is not a felon. But he affirmed that essentially, didn't he? My note says that in the common police court, found him guilty and he affirmed that he's being charged with a third degree felony punishable by seven year sentence and or a $15,000 fine. Why is that sufficient? It's not to impute knowledge to him that he knew exactly what he was doing. It imputes knowledge at the time that he made the statement. And again, your honor, Scott took place 16 years prior to his possession and what's relevant. You're suggesting in your argument that he did that, but he forgot that he did that. That's correct, your honor. Well, okay. It sounds like a convenient lapse of memory, if you ask me. How do you forget something so consequential, such as a third degree felony, a plea and a $15,000 fine, and then you forgot all a $15,000 fine because he didn't have to pay that. So what's memorable at the time of sentencing is the sentence itself, what you served. And what you served was, I apologize, your honor. Well, it was a seven year sentence and a $15,000 fine. And you're saying that he didn't have to pay a fine and he didn't serve the entirety of that sentence. His sentence was not seven years. That was the maximum penalty. His sentence that Mr. Davis, the time that Mr. Davis served of imprisonment was four months. You're right. I have that as the punishable by the seven years, yes. What's interesting about this is I took it a step further in thinking about it. I said, okay, you have hit the lotto, right? Time served and you go home. And people look at you and they say, what did you get? You've only been away four months. And he says, I got 23 months. I hit lotto. I came home after four. And I find it impossible that conversations like that didn't happen after he came home after four months on this charge. And your honor, that may be the case. Had Mr. Davis been sentenced, went back to jail, served some time and then got paroled out at a certain point. Mr. Davis appeared for his sentencing and was released that exact day. So in his mind, he served, he was convicted of and served a four month sentence. I understand the logic about, you know, how did you get cut that break? Well, he didn't know his sentence until he was already home. So there was no, how did you get it cut short? He was told at his sentencing date that he's going home. He's serving a time served sentence of two to 23 months. However, he only served four months. Oh, thank you so much. Thank you. May it please the court, Matthew McHale. And I'm representing the United States. Mr. Davis's, I just forgot defense here, which is different from what he actually, the argument that he actually made in his opening brief is no basis to throw out his conviction in this case. This is a case essentially about the third and fourth prongs of plain error review, which Mr. Davis has the burden of satisfying here. On the third prong, can he make the uphill climb that Greer says, or as this court said in Adams last week, can he rebut the presumption that a convicted felon ordinarily knows he is a convicted felon? And for at least, well, you'd agree that there have to be circumstances under which reasonable probability can be met, right? There can be a hypothetical circumstance for sure. One of them would be what Rahaf said is that where you have a defendant who was sentenced only to probation, perhaps there are some circumstances involving that kind of situation where a defendant can win on a plain error review standard. Here, this case comes nowhere close to that. And you'd also concede, I know it's not here, but if there was some cognitive ability issue, that that's certainly possible, right? I could imagine that also being possible, yes. Okay. So tell me then the argument here is passage of time. And I think our questioning showed probably some question about whether that would work, but there's got to be some period of time that would work, right? I mean, here you're 19 and it's, I think, 16 years later, but if it were 20 years later, that's certainly possible, no? It's possible. I mean, but I would suggest that even that, even a simple passage of time without some additional evidence showing forgetfulness would be required because as the Supreme Court has said, as this court has said, as the panel has just suggested in its questioning, it's not something that you would forget. I mean, just because it's 15 years later, I mean, maybe this somewhat depends on your sort of intuition about how memorable certain things are. I think, and I think Greer stands with the proposition and Adams stands with the proposition that you're not going to forget that. I mean, Mr. Davis was in prison for, I mean, yes, first of all, he had been told that the crime was punishable by seven years. I think it's a reasonable expectation that that's something he would be very concerned about and would pay attention to. And then he started serving his punishment for the crime in, I think, August of 2001. And he was actually in prison for four months, even before he got to the sentencing in December of 2001, when he, as Your Honor suggested, you know, it's kind of like, oh, I'm out, you know, I got sentenced to 23 months, but I'm four months, now I'm free and clear. Do you know if he was also exposed to a $15,000 fine? Do you know if he was, if a fine was imposed, that he had any financial consequence? I don't know, Your Honor. I don't have any reason to dispute my colleague's suggestion that he did not pay that fine, as I'm recalling. Well, he didn't pay it or it wasn't imposed? I believe, I believe there is a document in the record that indicated he may not have had to pay it because perhaps of financial inability, but I don't know that. Counsel, your adversary represented that the test is a subjective test for this particular point. Do you agree with that? And I asked that in light of a case called Lockhart, which talks about it's examining when a defendant challenges a guilty plea at ineffective assistance time, there has to be a showing, a reasonable probability that but for counsel's errors, he wouldn't have pled guilty. And the court says this analysis should be, quote, objectively made without regard to the idiosyncrasies of the particular decision maker. And so I'm wondering if you think it's a subjective test in this contest where it's an objective test in an ineffective assistance context. I do not think that you can argue that this is a subjective test, although I will say. That's two negatives. I do not think you, is it, can you or can you? I think there is an objective element for sure that has to be met and, but I would say, I would say two things. First of all, I mean, it is a question of mens rea ultimately. I mean, that is, you know, it is a defendant's knowledge and it can't be, it can't be without, or it does, you know, so in some sense there has to be some inquiry into what he was aware of or what he knew. But at the same time, the way that a defendant on a plain error review gets, gets there and he gets to succeed, potential success in tossing out a conviction like this, first of all, he has to come forward with some evidence. There can't just be speculation. There can't just be a sort of bare assertion that post hoc, as in this case, that I didn't know. And second, you know, there's also one aspect of the third prong of plain error review requires a reasonable probability being shown. And then in addition to that, I would also note this case also involves the fourth prong necessarily, I mean, for Mr. Davis to, you know, succeed in tossing his conviction. And that I think is purely objective in the sense that the court would have to ask and be satisfied that leaving this error uncorrected would, you know, seriously affect the integrity and public reputation of the court. So you can't get away, or Mr. Davis, you know, can't get away from that objective aspect here. The offense, the underlying offense, right, involved the theft of a weapon. Is that correct? Correct. Now, I ask you that because I see that's an ongoing thing with this individual. There are other offenses involving weapon offenses. Absolutely, Your Honor. So the specific crime that was cited in his indictment as a base for the 922 charge, 922g charge, was a theft by unlawful taking of a handgun. There is actually another, as we've argued in our brief, he has not only, not just that, but a second qualifying conviction that would also make it unlawful for him to possess under 922g. And that's because the year before that, he was convicted of another theft by unlawful taking, which was graded as a misdemeanor first degree, which in Pennsylvania is punishable by up to five years. And the details of that crime, as alleged in the affidavit of probable cause for his arrest, involved him stealing a bike from a kid, and then pointing a gun at that child. Is that in the record? Yes, Your Honor. Okay, because your briefing, we know, was written pre-rape, and there was a lot of time. So did you supplement the record with the records concerning this second conviction? We did, Your Honor, with as many records as we were able to get. We supplemented the government, in the government supplemental appendix, the first chunk of that contains, as I said, the affidavit of probable cause, some other state court records. We did ask for the trial transcript and anything else we could get, but were unsuccessful. I'm confused about something. On this particular point, when you described this crime, you said that it preceded the theft that is the subject of the predicate felony requirement? Yes, Your Honor. Right? Yes. Okay, so if that's not listed, and I presume that this other crime that we're talking about isn't listed in the indictment as the predicate, right? It's only- Correct, correct. So you're just giving us background in response to Judge Fuentes' question. You're not telling us to consider this, right? No, no. Well, I'm suggesting that it can be considered because if Mr. Davis is going to argue that there's a reasonable probability that I would not have pled guilty, I would have opted to let the jury know because he entered into an old chief stipulation. He's got to persuade you, I would suggest, that he's now committed to a course of action where he's going to want the jury to know the details of those multiple qualifying convictions because the government is going to want to say, okay, well, if we, you know, we couldn't enter these things into evidence because you were sort of protected by the old chief stipulation, but if we have to, we're going to want to tell the jury, well, he couldn't have forgotten about the fact that he had been convicted of crimes punishable by more than a year. He, you know, there's evidence that he- But I don't think that case is normal process. No, it was not a normal process. I mean, he- I think that's what the PSR said. Am I wrong about that? I don't believe it was a normal process, Your Honor. He was convicted after a bench trial of the 1999 theft by all unlawful taking of a bike involving, you know- And he was on probation and violated, right? He got revoked? He got revoked for, he did have later revocation of probation for other convictions. I don't know if it was connected to that 99 conviction. He did serve almost a year in prison for a later- There was a bench trial in that case, right? There was for the 99 case and then the 2000 and 2001 case were both bench trials, yes. And under Greer, whether it's for the third prong or the second prong, a fourth prong of plain error review, we can consider the entire record. Yes, Your Honor. And there's a reference to this event in the pre-sentence report to determine either one, there's a reasonable probability he wouldn't have pled guilty had he given a chance to do so in light of this other criminal event which led to a conviction. And similarly, whether or not there would be an injury to the reputation, integrity, etc., of the judicial proceedings, we can consider that as well. Yes, Your Honor. Yes. And he has pled guilty to possession of a, a felon being in possession of a weapon. He did in this case, yes, Your Honor. Okay. Yes. I don't have the note of the sentence. What was the sentence? So he, he received, the other thing, so he received a two-level benefit in his sentencing range calculations in this case because he pleaded guilty, so he got some credit for that. And he, his range was 51 months at the low end to 60-something on the high end, and he was in fact sentenced to 51 months, the, the low end. And without the two-level reduction, his, wasn't his, the top of the range he would  I believe that's right. So he saved at least a year. Yes. As a result of the plea. Yes. And that would be another consideration under the fourth factor? Yes. Is he, is he in custody now, is he? Well, he is now, yes. He, so his sentence on this, he finished serving his prison sentence in this case in early 2021. He was released to a halfway house. He then got home detention, was revoked back to a halfway house, and then was later incarcerated because he was charged with other crimes related to credit card theft and access device fraud. And he's currently in prison now because he was convicted last month at a trial on those counts. So he's, he's in prison now. I mean, I think otherwise he would, you know, he would have been on supervised release, is, like, I think so. But he's in prison now for these other, other proceedings. How do you reconcile your adversary's point that he would not have pled guilty because he would have testified he didn't know? And one of the things that we have in the record is his statements, and I made mention to this already, that the felony drug charges was, were withdrawn. And from his point of view, I didn't, he didn't have, quote, a qualifying felony because he was looking at state law. Does that bode in favor of the defendant's I think it's incriminating, Your Honor. I think the colloquy or the exchange that he gets into with the judge on pages 291 and 293 of the appendix actually shows that even though he thought he was arguing that he was legal to possess under Pennsylvania law, in, in sort of trying to make that argument, he admits that he had the felony. And the context of where he says that is, I think it's read to mean his knowledge at the time of the gun possession in 2016, because what he is saying is he seems to believe, and I don't, I don't, I'm not sure, I'm curious to know where he sort of got this, but he seems to believe that his, his state charges that he unfounded. And, and the reason why he's saying that is because he seems to think that it's true that he did not have a felony drug offense at that time. And so on that basis, it's true that under Pennsylvania law, he was not prohibited from possessing a firearm. However, he actually had multiple delinquent adjudications of aggravated assault charges in 1996 and 97 that by themselves prohibited him from possessing a firearm under Pennsylvania law. But setting that he, he then is trying to say that, yes, I knew I had a felony being the theft by unlawful taking, but he seems to be suggesting that because that wouldn't disable him under Pennsylvania law, therefore he was good under federal law. And I think what that shows, among other things, is that this, I think as the, you know, Judge Fuentes maybe suggested earlier was, this is a man who is keenly aware of his own criminal record. I mean, he's going back to his, at that time, you know, his sentencing was in 2019. He's talking about these drug charges from 2010 and he's talking about the felony from 2000, from 2001 and talking about how did or did not, you know, affect his qualifications. So I think the fact that he's there saying, yeah, I had a felony shows maybe more clearly than anything else that he was, it's not the government's burden to prove this. I mean, he'd have to come up with, come forward with some evidence of his own, but that really sinks, sinks his case. That's essentially this consequences argument that we've heard that apparently is not abandoned, but it would appear that the law would require it to be abandoned because I mean, I see page 293, where he's essentially just saying, I was in my house. I thought, you know, I had the gun in there and that really wasn't, he thought it fell outside of the law, which I suppose at this juncture is not relevant. My time's up. Can I just, is it all right if I just respond to that? I mean, I think that is the consequences argument. And as we pointed out, that is not relevant. I mean, that is, as we said in our, in our response brief, when you read Mr. Davis's opening brief, he says, well, based on a reading of the Pennsylvania statute, I, you know, Mr. Davis thought he was okay to possess. And Mr. Davis was unclear or was confused about his qualifications for possessing. That's not, it's really not relevant. And, and, and even though the panel was asking questions before about, I would say, while there has been some development in the law since, you know, since this case started being briefed in 2020 and Greer was after that, obviously, I don't think there was anything, any development after, you know, Mr. Davis's opening brief that in any way complicated Rahaf's holding, which was very clear that the element that was lacking up to that point was knowledge of status. I mean, and so I don't think that Mr. Davis really made that argument in his opening brief. And to the extent that he continues trying to make the argument now about qualifications, it's just not, there's no purchase. I was going to ask you, actually ask you about that, that the Rahaf case where the Supreme Court held that for firearm possession offenses, the government has to prove the defendant knew that he belonged to the relevant category of persons who were prohibited from possessing firearms. Has the government done that in this case? Well, the government, well, the government did not do that at the trial in this case because that was pre-Rahaf, but what Mr. Davis has to show, you know, it's his burden to show that the plain error that now we accept occurred because, you know, the parties were not aware of that Rahaf element at the time, but Mr. Davis would have to show that there was some evidence that he could, that what, that he was unaware of his knowledge of status and that there's a reasonable probability that the outcome would have been different and that he would also have to satisfy the fourth case. And apropos of what you were saying about the development of the law, the law has developed through different circuits, including in the third circuit, that there's no obligation to prove the defendant understood the consequences of his possession. Correct, Your Honor, I would agree with that. If the court has no further questions, we would ask the court to affirm. Okay. Thank you so much. Thank you, Your Honor. Your Honor, briefly, I do want to touch on a few points. It was mentioned that, and it has come up through questioning, that Mr. Davis seemed to be well aware of his criminal history and his evidence that the government has set forth as to his knowledge and recognizing when we're on plain error review, the burden is ours. But the government, the evidence that's in the record and that the government has set forth goes specifically, at least as it relates to the old chief stipulation and as it relates to the statements that were made during sentencing and other proceedings, goes to a time after Mr. Davis was charged in federal court and facing a significant amount of prison time. So it should come to no surprise that at that point, while he's defending a federal case and he's in prison, he is going to do legal research. He's going to look into his own criminal history. Is there anything in the record that would tell us that, though? There's no evidence. You're asking us to make another inference that he must be spending his time doing legal research. There's no evidence in the record on this, correct? Your Honor, there is no direct evidence in the record that he was doing legal research while he's in jail. But what the record does reflect is the timing, that at the time the statements were made, was two years after Mr. Davis had already been indicted. There was a point in time when he was completely barred from possessing any firearms or weapons, wasn't he? You're asking if, you know, at the time he possessed a firearm, if he was completely barred from possessing firearms? Yes, Your Honor. And, you know, but he did not know. That was at about the first time he had the Well, he was exposed to a seven-year sentence and a $15,000 fine. At that time, was he barred or precluded from owning any weapons? He was, Your Honor. And our argument is not that, you know, we're not arguing that Mr. Davis was permitted to possess a firearm. Our position is that he's not guilty. But he did violate that admonition, did he not? He possessed a firearm when legally he was not permitted to carry one. However, since free hate, in order to convict him of the 922g offense, the government also has to prove that he knew of his relevant status. So merely possessing a firearm without the knowledge element is not a criminal offense. But he was told that you are barred from owning or possessing a firearm. Why isn't that sufficient? He was not told that he was, you know, barred from owning a firearm. He was told that he was convicted of offense punishable by up to seven years. So you're saying he was totally unaware that he could not own or possess a firearm? That is correct, Your Honor. In addition to not knowing that he couldn't possess a firearm, he also did not know that he was convicted of what is a federal felony, a crime punishable by up to seven years. And, you know... So let me ask this question. Here's what I'm concerned about, myriad things. But if I were contemplating drafting an opinion, the draft would have to say that in the absence of objective evidence to support the proposition at hand, I would have to say it's okay for an appellant to say, I forgot, or I don't remember what would objectively appear to be a quite memorable event. That's what I'd have to conclude in order to write an opinion granting your client relief, right? Because that's what you're asking us to do. You would have to essentially consider all of the other facts around it. It's not necessarily... I'm not asking this court for an opinion saying that all an appellant has to say is he forgot. But the court can consider the surrounding factors as to whether or not he did have knowledge 16 years down the road. And that includes the time passing. That includes the hiccup of being charged with an offense that he was charged as being a felon in possession with an offense he was never convicted of that further confirms, okay, I'm not a prohibited person. I'm sorry, can you say that again? Because you made a reference to it in the letter brief we got yesterday. Can you explain what that is? Because I didn't remember seeing that argument in the brief or the reply. So explain that point you just made. Sure. So your honor, when Mr. Davis was charged in state court before this case was adopted in federal court, he was charged with a felon in possession in state court. But the predicate conviction that they listed on the documents was a possession with intent to deliver felony. Mr. Davis has never been convicted of a possession with intent to deliver felony. When he was charged with that, he received those documents and said, this is something that could easily be remedied in the courts. I'll just come forward with my documents and criminal history. This is clearly a mistake. I'm not a person with sex. So if we're going to accept that representation of that, he apparently knew within the months before this indictment was returned, what his criminal history showed, because he was conversant enough as you're just describing to us. And for the first time, I didn't, frankly, I didn't see it in your opening brief or reply that he knew enough to bring up for one of the guns that is the subject of this case that he didn't have a qualifying predicate based upon the predicate the state authorities chose to identify. Well, Your Honor, we're not disputing that Mr. Davis knew that he was convicted of theft. And so when he received the documents and it said possession with intent to deliver, you know, you've been convicted of possession with intent to deliver. It's very memorable. You know what you're charged with. You know what you're convicted of. So we're not disputing that he knew he was convicted of theft. The issue is whether or not he knew he So, okay, so we're supposed to, we're supposed to accept that he would remember that it was theft, but he would not remember that it was a max of seven years and he'd been told it was a felony and that his sentence was up to 23 months. That's the proposition you want us to accept. Yes, that's correct, Your Honor. Okay. There was a trial in a case and I just have a here that before trial in this case, he stipulated that he had a felony conviction. You don't dispute that. No, no, Your Honor. I don't dispute that. And that's part of the routine old chief, uh, old chief stipulation, which is generally filed in most 922g cases. And all the old chief stipulation says is that at the time the stipulation is signed again, after the possession of the firearms and after Mr. Davis was indicted and had consultations with counsel at that time, he knew that he was convicted of a crime punishable by more than a year. And at about that time he had a prior offense for unlawful possession of a weapon. Are you referring to his pending charge? Yeah. At the time, yeah, at the time that he signed the old chief stipulation, he was proceeding to trial on both of those cases. It was a consolidated remand for a new trial in this case. Thank you. Um, thanks very much. Um, we appreciate counsel's argument and we'll take the matter under advisement.